## AFFIDAVIT IN SUPPORT OF A SEARCH WARRANT

Your affiant, Jason Cole, is applying for a warrant to search the residence of Salvadore Patrick MARTINEZ, located at 2827 S Quay Way, Denver, Colorado based upon the below listed facts:

1. Your affiant, a Special Agent (SA) with the Bureau of Alcohol, Tobacco, Firearms and Explosives (ATF), United States Department of Justice, Denver, Colorado, being duly sworn, states as follows: I am an "investigative or law enforcement officer of the United States," within the meaning of Title 18, United States Code, Section 2510(7), that is an officer of the United States empowered by law to conduct investigations of and to make arrests for offenses enumerated by statute in the United States Code and the Colorado Statutory Code. That I am authorized under the Federal Rules of Criminal Procedure, Rule 41(a)(1)(C) as a "Federal law enforcement officer'... who is engaged in enforcing the criminal laws and is within any category of officers authorized by the Attorney General to request a search warrant." I have been employed as a Special Agent with ATF since 2008. My primary duties consist of the enforcement of federal firearms laws, armed narcotics trafficking, and conspiracy laws. I have conducted and/or participated in many such investigations as an ATF Agent. Prior to becoming an ATF SA, I was employed as an Agent with the United States Border Patrol for approximately 2 years and was stationed in Tucson, Arizona. During my career as a United Stated Border Patrol Agent I assisted in the apprehension and investigation of individuals involved in narcotics and human trafficking. I graduated from Pepperdine University in 2001 with a Bachelor of Arts in Communication. I have written

Page 1


DEFENDANT'S EXHIBIT A
13-cr-00183-JLK

000097

and/or participated in the execution of approximately 40 federal and state search warrants involving organized crime, illegal firearms possession, the use and trafficking of narcotics and armed narcotics trafficking.

2. As an ATF Special Agent, I am familiar with federal criminal laws pertaining to firearms, explosives and narcotics violations. I know that it is a violation of Title 21 USC § 841(a)(1) for any person knowingly or intentionally to manufacture, distribute, or dispense ... a controlled substance. I know that it is a violation of Title 21 USC § 844(a) for any person to knowingly or intentionally to possess a controlled substance. I know that methamphetamine ("meth") is defined as a Schedule II drug by the Controlled Substance act as defined by Title 21 USC. Additionally I know that it is a violation of Title 18 USC § 922(g)(1) for any person who has been convicted in any court of, a crime punishable by imprisonment for a term exceeding one year ... to possess any firearm or ammunition. I know that it is a violation of Title 18 USC § 922(a)(6) for any person in connection with the acquisition or attempted acquisition of any firearm ... from a licensed dealer ... to make any false or fictitious or written statement ... intended to deceive such dealer with respect to any fact material to the lawfulness of the sale. That it is a violation of Title 18 USC § 922(d) for any person to sell or otherwise dispose of any firearm or ammunition to any person knowing or having reasonable cause to believe that such person has been convicted in any court of a crime punishable by imprisonment for a term exceeding one year. That is a violation of Title 18 USC § 924(a)(1)(A) for any person to knowingly make any false statement or representation with respect to the information required by this chapter to be kept in the records of a person licensed under this chapter. Finally, your affiant knows that it is a

Page 2

000098

violation of Title 18 USC § 924(c)(1)(A) for any person to possess a firearm, during and in relation to any drug trafficking crime.

3. This affidavit is based on an ongoing investigation by your affiant, by observations made and detailed by ATF SAs during the course of the investigation, by observations made over the course of time by a cooperating witness (Elaine ANDERSON). The information set forth in this affidavit is not intended to detail each and every fact and circumstance of this investigation or all information known to me or others in this investigation. The information set forth herein is based upon my participation in the investigation, encompassing my personal knowledge, observations and experience, as well as information obtained from my review of investigative reports, interviews and debriefings with the participating officers and agents and cooperating persons who have participated in this investigation.

4. On October 3, 2012, a firearm was recovered following a shoot out between members of La Linea Cartel and Mexican Law Enforcement officers in Chihuahua, Chihuahua, Mexico. The firearm, a DPMS, Inc., a .223 caliber, AR-15-style rifle, bearing serial number FH131152 was recovered from individuals identified as Javier Octavio Rubio Perez (DOB: 06/04/1971) and Ricardo Arzaga Venegas (DOB: 12/10/1974). This information was provided through ATF SAs headquartered in Mexico through ATF SA Brian Bennett in Denver. A subsequent trace of the firearm revealed that the rifle had been part of a sale of six (6) rifles purchased in Colorado on June 30, 2012 by an individual identified as Elaine Merlynn ANDERSON (DOB: 02/11/1994).

5. In December 2012, ATF SAs traveled to several firearms dealers around the Denver Metro Area and learned that ANDERSON had purchased an additional three

000099

(3) rifles on July 6, 2012. In total, ATF SAs identified nine (9) rifles purchased over the course of 7 days by ANDERSON. These firearms were purchased from three separate Federal Firearms Licensees (FFLs) located in the Denver Metro Area:

- 06/30/12 – Century Arms, Model AKMS, 7.62 caliber rifle, S/N: KMS11110
- 06/30/12 – Century Arms, Model AKMS, 7.62 caliber rifle, S/N: KMS10044
- 06/30/12 – Century Arms, Model AKMS, 7.62 caliber rifle, S/N: KMS11118
- 06/30/12 – DPMS Inc., Model A15, 5.56 caliber rifle, S/N: F248709
- 06/30/12 – DPMS Inc., Model A15, 5.56 caliber rifle, S/N: FH131152
- 06/30/12 – DPMS Inc., Model A15, 5.56 caliber rifle, S/N: F248710
- 07/06/12 - Yugo, Model SKS, 7.62 caliber rifle, S/N: P632629
- 07/06/12 – Russian, Model SKS, 7.62 caliber rifle, S/N: BP3795/9934769
- 07/06/12 – Norinco, Model SKS, 7.62 caliber rifle, S/N: 170493

6. Additionally, there was a tenth (10) rifle subsequently discovered to have been purchased by ANDERSON on 06/30/2012 and was identified later by ATF SAs, this rifle was identified as a Norinco, Model SKS, 7.62 caliber rifle, S/N: 11497603/2012000178. Your affiant has consulted with ATF interstate nexus experts and determined that none of the above listed firearms were manufactured in the State of Colorado, and must have traveled in interstate or foreign commerce.

7. This information was provided to your affiant on January 7, 2013 and an ATF investigation was opened on January 8, 2013. Your affiant identified Elaine Merlynn ANDERSON and queried her information in various law enforcement and public databases. Your affiant learned that Elaine ANDERSON (FBI#: 44946JD0) had been arrested by the Cottage Grove Police Department in Oregon and charged as a Juvenile with 2nd Degree Theft, a misdemeanor charge in May, 2010. ANDERSON had no other

Page 4

identifiable criminal history. Your affiant then discovered that in August 2013, ANDERSON had been identified as a passenger in a vehicle which had attempted to elude police in Lakewood, Colorado. ANDERSON was not charged in the case and was scheduled to testify against the charged individual (ANDERSON was never called to testify as the case reached a disposition before trial). ANDERSON later admitted to ATF SAs that between the ages of 15 and 17 years old she had been a heroin abuser, but no longer used heroin. ANDERSON further admitted to occasionally smoking marijuana.

8. On January 17, 2013, your affiant and ATF SA Mark Feltz traveled to the last known address of Elaine ANDERSON in an attempt to contact and interview her relating to the firearms found to be purchased by her the previous summer. SAs made contact with ANDERSON identified themselves as ATF Agents. SAs explained that she was not under arrest and asked whether she would be willing to answer questions to assist in an investigation and further explained that she had the right not to answer investigator's questions. ANDERSON agreed to answer the questions.

9. When asked about the purchase of the firearms, ANDERSON admitted to having purchased the firearms for an individual identified as Salvadore MARTINEZ aka "Chavo". ANDERSON stated that prior to June 2012, she and MARTINEZ had been involved in a relationship and that she was surprised when MARTINEZ contacted her and asked if she would be willing to purchase some firearms because they had not spoken in "a couple of months" (prior to that contact). MARTINEZ explained that he needed ANDERSON to purchase the firearms "because he (MARTINEZ) couldn't buy guns." ANDERSON stated that she purchased the firearms and further admitted that

Page 5

she had provided false information on the ATF Form 4473 "Firearms Transaction Record" when she stated that she was the actual transferee/buyer of the firearms (Section 11(a)).

10.     ANDERSON then explained that she had MARTINEZ fill out a receipt for the firearms and that she was paid approximately $1,000 for her part in the transaction. ANDERSON stated that MARTINEZ had used a fake name and address on the receipt and provided SAs with a handwritten receipt for which detailed the sale of ten (10) firearms by Manufacturer and Serial Number. The receipt shows that the firearms were transferred to: Larry Nellis with an address of 2750 Curtis, Denver, CO 80204. The receipt is dated July 7, 2013. ANDERSON stated that she does not know "Larry Nellis" and that the receipt was for MARTINEZ. ANDERSON provided SAs with receipts from three (3) Federal Firearms dealers for the purchase of each of the firearms. Based upon the receipts provided by ANDERSON SAs were able to identify that the additional firearm was identified as a Norinco, model SKS, 7.62x39 caliber rifle bearing Serial Number: 11497603/201200178 and had been purchase on June 30, 2012.

11.     ANDERSON stated that she recently been contacted by MARTINEZ, but had previously not heard from MARTINEZ for several months. ANDERSON agreed to assist SAs in identifying MARTINEZ and in any other way possible. ANDERSON was able to provide a telephone number of 720-708-7526. SAs were later to obtain toll records for this number and learned that it was a Sprint/Nextel cellular telephone which was active between the dates of December 9, 2012 through March 19, 2013.

12.     SAs were able to identify Salvadore Patrick MARTINEZ (DOB: 01/09/1977, FBI#: 934555JB7). Your affiant obtained a photograph of MARTINEZ from

Page 6

000102

the Colorado Department of Motor Vehicles. ANDERSON identified the photograph as MARTINEZ. It should be noted that the photograph was shown in such a way so that no name or other identifiable information was visible to ANDERSON. Additionally, ANDERSON accompanied SAs and pointed out MARTINEZ's residence as 2827 S Quay Way, Denver, CO. Your affiant noted that a Black Chevrolet Tahoe was parked in the driveway of the residence. The vehicle, bearing Colorado License Plate, 617ZJE, listed to Salvadore Martinez at the address of 4821 Tarcoola Lane, Highlands Ranch, CO. Surveillance of the two (2) residences showed that MARTINEZ was never observed traveling to or staying at the residence in Highlands Ranch, but that the vehicle was parked at the 2827 S Quay Way, Denver, CO address each time the vehicle was observed by SAs. Furthermore, ANDERSON stated that she had never known MARTINEZ to occupy any residence other that 2827 S Quay Way, Denver, CO.

13. Your affiant observed that 2827 S Quay Way is a single family residence (Tri-Level construction) on the west side of S Quay Way. The residence is the fourth residence located north of the intersection of S Quay Way and W Bates Avenue. The southern portion of the residence is one story while the northern portion of the residence appears to be two stories. The east facing front door is black in color and sits on the top of a large concrete step. South of the front door and affixed to the residence is a gold/yellow wooden sign with black numbers "2827" attached to the sign. Each number is approximately 4 inches tall. There is a large picture window with black shutters which faces east and is located approximately 10 feet south of the front door.
The exterior of the residence is tan or light orange colored brick with tan/green siding. The roof has dark grey shingles. There are black shutters around the two upper

Page 7

bedroom windows which face east. The front yard is grass. There is a tree located at the southeast corner of the residence. A driveway runs along the south side of the residence. There is a gravel and paving stone walking path from the sidewalk of S Quay Way to a set of concrete steps which lead to the front door of the residence. The driveway on the south side of the residence runs from S Quay Way to the rear (west side) of the property. There is a parking area in front of a detached garage. The garage is a two-car garage with two large garage doors which are white in color. The exterior of the garage is tan/green siding.

There is a wooden privacy fence which separates the residence from the properties on the south and north sides. The fence is approximately 6 feet high.

14. Your affiant queried MARTINEZ through law enforcement and public databases. It was discovered that MARTINEZ is a multi-convicted felon. He has convictions for Felony Menacing in 2003 (Jefferson County Court Case 2003CR003564), Possession of Weapon by a Previous Offender and Possession with Intent to Distribute in 2007 (Jefferson County Court Case 2007CR000305). Additionally, MARTINEZ has a misdemeanor conviction for Possession of a Controlled Substance in 1998 from the state of Utah. MARTINEZ has other arrests which did not result in convictions for drug and weapons possession.

15. ANDERSON described to SAs that MARTINEZ is a dealer of methamphetamine ("meth"). When asked how she knew this information, ANDERSON stated that she had previously seen amounts of meth in MARTINEZ's possession. Specifically, ANDERSON stated that she had seen an amount of meth in a plastic baggie in the center console of MARTINEZ's vehicle. ANDERSON stated that this

000104

occurred while she was dating MARTINEZ in approximately Spring of 2012. ANDERSON stated that she does not know anything about meth or meth amounts but approximated that there was "about half of a sandwich bag." Based upon your affiant's experience and in consultation with other law enforcement officials this amount would likely equal approximately two to three (2-3) ounces of meth.

16. Additionally, ANDERSON had observed a smaller amount of meth in a plastic bag on the nightstand table in MARTINEZ's residence at 2827 S Quay Way, Denver, CO. This occurred at approximately the same time as the information provided in the paragraph above: Spring 2012. ANDERSON described that this was also in a plastic bag and she approximated that the meth occupied one-quarter of the bag. Based upon your affiant's experience and in consultation with other law enforcement officials, this amount would equal approximately one (1) ounce of meth.

17. ANDERSON admitted that she had never seen MARTINEZ sell the meth to any individuals, but that based upon conversations with MARTINEZ she knew that he distributed meth and other drugs.

18. ANDERSON stated to SAs that MARTINEZ was involved in growing and selling marijuana. According to ANDERSON, MARTINEZ had, at one point, wanted to set up a marijuana grow in the garage of his residence at 2827 S Quay Way, Denver, CO. ANDERSON did not know whether or not MARTINEZ had ever started growing marijuana at the residence.

19. ANDERSON stated that she believed that she would be able to purchase meth or other narcotics from MARTINEZ and could assist in facilitating the introduction of an ATF Undercover Agent to MARTINEZ. SAs instructed ANDERSON to attempt to

Page 9

arrange the purchase of meth from MARTINEZ.

20. On Wednesday, February 6, 2013, ANDERSON met with MARTINEZ in order to arrange the future purchase of meth. ANDERSON was outfitted with electronic recording equipment for the meeting. ANDERSON met with MARTINEZ in MARTINEZ's Black Chevrolet Tahoe bearing Colorado License Plate 617ZJE. MARTINEZ offered ANDERSON a marijuana pipe filled with marijuana for ANDERSON to smoke, which ANDERSON refused. MARTINEZ stated that he had just finished growing marijuana and that it was currently drying prior to being sold. MARTINEZ identified that he had between 75 and 100 plants and inquired whether ANDERSON would be willing to grow marijuana for him.

21. When ANDERSON inquired about purchasing drugs from MARTINEZ, MARTINEZ stated that he was not currently selling meth. MARTINEZ went on to explain that one of his associates had just been arrested "out of state by the fuckin' Feds" and that the "Feds got all of our phones" (phone numbers associated with MARTINEZ and other individuals), and stated to ANDERSON that he "might still get arrested." MARTINEZ went on to indicate that he was not going to be involved in selling meth or other drugs (apart from marijuana) for approximately one year.

22. MARTINEZ stated to ANDERSON during this meeting that if ANDERSON had approached him two (2) weeks prior to this meeting that MARTINEZ "had everything" (indicating that he had recently possessed meth and possibly other drugs for distribution) and that he could have sold ANDERSON meth or other drugs.

23. On Sunday, March 17, 2013, ANDERSON contacted your affiant and stated that she had been out of touch with MARTINEZ because MARTINEZ had

Page 10

recently changed his phone number. ANDERSON was able to provide a new phone number of 303-257-2098. SAs were later able to obtain toll records for this number for the dates between dates of February 1, 2013 through March 25, 2013. Records indicate that this phone is a "Blackberry" cellular phone. MARTINEZ had previously explained to ANDERSON his understanding of Federal Wire Tap laws and procedures and provided these as reasons why he frequently changes his phone and phone number. ANDERSON stated that she had been in contact with MARTINEZ and that MARTINEZ informed her that he was getting a shipment of cocaine in the next couple of days and inquired as to whether ANDERSON was still interested in purchasing drugs.

24. On March 28, 2013, ATF SAs attempted to arrange a controlled purchase of cocaine from MARTINEZ. ANDERSON was unable to get into contact with MARTINEZ at the telephone number of 303-257-2098 and the controlled purchase was shut down.

25. On April 11, 2013, your affiant and SA Feltz conducted a trash run at 2827 S Quay Way, Denver, CO. Among the items recovered during the trash run was a small amount of marijuana found in a paper bag labeled: 'The Clinic – Medical Marijuana Center" and a receipt from BBVA Compass Bank in which $1,200 in cash had been deposited into an account. On the back of the receipt were handwritten amounts totaling $2,200. Additionally, a letter was found addressed to Salvadore MARTINEZ with an address listed of 4185 Green Ct., Denver, CO. SAs also located two (2) boxes for Apple iphone 4 style telephones. Investigators have been unable to identify the primary users of these phones as there is very little information known about these phones.

26. SAs and other law enforcement investigators have queried financial databases and have not identified any bank accounts associated with MARTINEZ. Furthermore, MARTINEZ does not show any wages identified to the state of Colorado since the 3rd Quarter of 2008. Additionally, investigators were able to obtain the purchase and title information for the 2007 Black Chevrolet Tahoe owned by MARTINEZ. The purchase price of the vehicle is listed as $28,799.00 and shows that the vehicle was purchased in 2011 and while the title paperwork indicates that Ultimate Machines (the vehicle dealership) maintained a lien of the vehicle, investigators cannot find any indication of payments relating to this vehicle. SAs and investigators believe that MARTINEZ paid cash for the vehicle and that the title paperwork was filled out with false or misleading information.

27. On April 19, 2013, your affiant and SA Feltz met with ANDERSON in order to attempt to arrange a meeting with MARTINEZ. During the interview, ANDERSON stated that on or about April 6, 2013, she had been contacted by MARTINEZ. According to ANDERSON, MARTINEZ offered her $40.00 for her to come and clean his residence. ANDERSON stated that she agreed and traveled to his residence at 2827 S Quay Way, Denver, CO on about April 6, 2012. ANDERSON stated that during this meeting MARTINEZ took a handgun out of a kitchen cabinet. MARTINEZ set the handgun on the counter. ANDERSON stated that she does not know much about firearms but described that the handgun was a black semi-automatic pistol with a removable magazine. According to ANDERSON she observed ammunition in the magazine of the firearm. ANDERSON did not immediately contact ATF SAs regarding the firearm and provided the information approximately two (2) weeks later. However,

Page 12